CHARLES F. SANDERS, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

292 N. W. 35

FILED MAY 3, 1940. No. 30787.

*Mothersead & York, J. W. Weingarten* and *W. P. Loomis,* for appellant.

*William Morrow, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an appeal from a verdict and judgment for $1,000 damages for personal injuries to the plaintiff from an assault by one Babcock, an intruder, in the defendant's depot at Torrington, Wyoming. The negligence charged against the defendant, a common carrier, is in failing to protect the plaintiff, a patron, from such assault.

The defendant for reversal relies upon a number of errors. The defendant insists that the evidence is insufficient to sustain the verdict, and that the court erred in overruling defendant's motion for a directed verdict at the close of the evidence. The defendant charges error in the giving of instructions Nos. 1, 2, 3, 5, 10 and 12 upon the court's own motion, and in the court's refusal to give instructions Nos. 3, 6 and 7 requested by the defendant.

There is considerable dispute in the evidence, but the altercation appears to have taken place about as follows:

John Babcock has lived in Torrington, Wyoming, where he has been conducting a dray line for the last seven years. Two of his sons, aged 17 and 15 years, did certain work for the plaintiff in blocking and thinning beets. Plaintiff is 48 years old, and has resided in Torrington since 1936, and has worked as a carpenter, a sheet metal worker, a bricklayer, and also on W. P. A. jobs. On July 15, 1938, plaintiff and his wife went to the depot at about 4:15 p. m. to take the train to Scottsbluff, and at the curb of the Burlington depot they met John Babcock, who walked along beside them for about 70 to 80 feet, the wife walking in the center. The plaintiff went into the waiting-room first, Babcock just behind, and the wife in the rear. When the plaintiff got to the ticket window he asked if the train was on time, and asked for two tickets. As the station agent was reaching for the tickets, John Babcock, in a loud tone, asked, "Where is the boys' money?" The plaintiff replied that "the money was up in Mr. Sawyer's office for the boys," whereupon Bab-

cock said, "If you don't dig up, I will beat the hell out of you," to which the plaintiff replied, "It's up to Sawyer's office, but you'll have to sign and get it." The tickets at that time were lying on the counter, and plaintiff had paid for them. While the plaintiff was picking up the change, Babcock hit him. Plaintiff says that he holloed to the ticket agent to call the police and help.

Plaintiff says that when Babcock "hit the first lick" the ticket agent pulled the window down; that while he was on the floor he kicked at the door and asked the agent to let him in; that Babcock kicked him in the right side and in the head, then plaintiff's wife stepped in front of plaintiff, who got to his feet and wiped the blood from his eyes and nose. There is evidence that Babcock tried to hit him after he was up, but did not succeed; that the plaintiff then went with Babcock to Sawyer's office.

The actual assault and beating was continuous, and of very short duration. The plaintiff's wife did not testify in the case. The plaintiff testified that after the fight he could hardly walk on his right leg, but he went from the station to Sawyer's office, which is up a long flight of stairs; then he walked to the county attorney's office, over the Chevrolet garage, about a block and a half from Sawyer's office, and then his father-in-law came with the car and took him to the courthouse, and from there to the judge's home, where he signed some papers; that he did not call any doctor, but just doctored himself.

He testified in detail just where he worked after this time, putting up a brick chimney, doing carpenter work and brick work, and the amount of money he received for each of these odd jobs, and then told of his work in the sugar mill at Lyman, running a trash catcher, for which he drew $37\frac{1}{2}$ cents an hour for eight hours a day, which sugar campaign ran until the 2d day of December.

Henry Herdt, one of the plaintiff's witnesses, testified that he worked at common labor, and first got acquainted with the plaintiff south of Gering in 1934, where the plaintiff was digging potatoes; that he met him again in 1936 in

a pool hall in Scottsbluff; that on July 15, 1938, he came into the waiting-room just behind them, and stood right behind them at the ticket window; that Sanders asked for two tickets, and the "other guy" asked for the boys' money, and said, "Are you going to pay me off or I am going to beat the hell out of you." Sanders said, "I ain't got anything to do with the money, it is at Sawyer's office;" then the other fellow "hauled off and hit him," and Sanders hit the floor. Sanders was down and kicked at the door, and holloed for the agent to let him in, and the other fellow hit and kicked Sanders "quite a few licks." He testified that Sanders was all bloody and could not walk straight.

On cross-examination he was asked the question: "Did he hit him suddenly? A. Right now. Q. Just hauled off and smacked him, is that right? A. Yes, sir. Q. Did you think that he was going to hit him? A. No. Q. You didn't have any idea that this other man was going to strike him? A. I didn't know they had anything between them, just the deal they talked about. Q. You didn't have any idea that this other man was going to hit him until he hauled off and hit him? A. Never thought of it."

Harry M. Sayre testified that he was the cashier and operator at the Burlington depot at Torrington, Wyoming, and was on duty on July 15, 1938; that there was an iron or metal grillwork, or bars, in front of the ticket window; that he did not notice the plaintiff until he came up to the window and asked for two tickets to Scottsbluff, and he passed them out to him, and he paid for them; that, after he got the tickets and paid for them, Mr. Babcock approached Mr. Sanders and they got into an argument; that he only heard part of their argument, which was over wages due the Babcock children; that the men had walked over between two benches, and Mr. Babcock struck at Mr. Sanders; that just then the train whistled into town, and he walked over to pull the signal board for the train, and testified positively that he never closed the ticket window; that it has a heavy grating in front of it, and he did not shut it at all; that he was the only one in the ticket office at the time the train was

coming in, and as he was required to work the express and baggage, he went out; that after he had worked the train he saw Mr. Sanders, Mr. Babcock, and a woman walking north up the street.

Dr. J. P. Weyrens testified for the plaintiff that he had examined his head September 29, 1938, taking an X-ray; that the right mastoid was entirely destroyed, that is, the one right back of the ear; that he found the hearing left in the ear was reduced to 30 or 40 per cent., and that one ear drum is distorted, wrinkled, and perforated, and gave evidence of a chronic infection. He further testified that the partitions in that mastoid had been destroyed, due to some infection which had been in that bone once upon a time.

The defendant called Dr. Kennith Ohme, who testified that in July, 1938, F. J. Reed, an attorney, of Mitchell, called him up one Sunday afternoon and asked if he would come uptown and see somebody who said he was in an accident; that the plaintiff, Sanders, walked into the office, and had his head bandaged, and did not want him to take the bandage off, but the doctor testified he took the bandage off and did not see anything under it, and so he did not put it back on. On cross-examination he testified that he was not the physician and surgeon for the Burlington railroad at Mitchell.

The law in such cases is that a carrier is not liable for an assault on a passenger by an intruder if it does not appear that the employee of the carrier has been negligent in failing to anticipate or prevent his act of violence. 10 Am. Jur. 274, sec. 1468, also sec. 1466; *Arkansas Power & Light Co. v. Steinheil,* 190 Ark. 470, 80 S. W. (2d) 921.

This court has stated: "The wrongful act of a stranger is not sufficient to make it liable, unless it might reasonably have been foreseen and guarded against by the carrier." *Bevard v. Lincoln Traction Co.,* 74 Neb. 802, 105 N. W. 635.

"The carrier owes a duty to protect passengers from wrongs inflicted by strangers or intruders, if the danger is, or in the exercise of due care may be, known to the carrier's employees, and can be prevented by them, and the car-

rier may be liable for injuries due to a neglect of such duty." 13 C. J. S. 1303, sec. 696.

The defendant insists that prejudicial error occurred in the giving of instruction No. 12 by the court, which told the jury that the evidence shows that plaintiff was at the defendant's station and had purchased a ticket, and that, if the jury find that while in the view of defendant's agent, "where the defendant's agent did see him and plaintiff was without provocation assaulted and knocked down and beaten and kicked, and defendant's agent did not exercise reasonable care and precaution to protect the plaintiff from said assault, and by reason of said assault the plaintiff was injured after defendant's agent had knowledge of said assault, then your verdict should be for the plaintiff and you should assess the amount of his recovery in any such amount as you think will reasonably compensate him for the injuries which he received, if any, and the pain and suffering he endured, if any, and the loss of time that he sustained, if any, only taking into account the extent of injuries he received, if any, after the defendant's agent had knowledge of said assault."

The error in the instruction is that it told the jury, positively and without qualification, that, if the assault was in view of the station agent, and plaintiff was injured after the station agent had knowledge of the assault, then their verdict would be for the plaintiff.

It may be admitted that in instruction No. 9 it was stated that the carrier would not be liable unless, after the agent had knowledge that would lead a reasonably prudent man to anticipate that an assault would be made, and after having obtained such knowledge, he was, in the opinion of the jury, able to prevent the assault; and in instruction No. 10 the jury had been properly told that the defendant company was not liable for the injuries sustained by the plaintiff as a result of the first blow.

It is argued by defendant that this action was brought by plaintiff on the theory that the defendant's agent was negligent in not anticipating and preventing the assault before

it started, but the evidence indicated that the action could not be sustained on that theory, and then the plaintiff endeavored to sustain his claim on the theory that the defendant's agent negligently failed to stop the fight after it started, but in instruction No. 12 the court did not correctly submit that issue, for it told the jury to find for the plaintiff if the plaintiff was injured after defendant's agent had knowledge of the assault, which did not carry to the jury several requirements, among them, to find that the agent could have prevented the assault, or that the injury was not the result of the first powerful blow.

"An instruction which sets out a state of facts, and authorizes a verdict for one of the parties upon a finding of such facts, is erroneous, unless it includes every fact necessary to sustain a verdict in favor of such party, unless the omitted facts are conclusively established.

"Where such instruction is complete in itself, the error therein is not cured by the giving of other instructions which correctly state the law or the facts essential to a recovery by such party." *Standard Distilling & Distributing Co. v. Harris,* 75 Neb. 480, 106 N. W. 582. See, also, *Kor v. American Eagle Fire Ins. Co.,* 104 Neb. 610, 178 N. W. 182; *Knapp v. Chicago, K. & N. R. Co.,* 57 Neb. 195, 77 N. W. 656; *Pritchett v. Johnson,* 5 Neb. (Unof.) 49, 97 N. W. 223.

"Where two conflicting instructions are given on a question, one containing an incorrect, and the other a correct, statement of the law, the latter will not cure the former." *Koehn v. City of Hastings,* 114 Neb. 106, 206 N. W. 19.

The plaintiff's witness, Henry Herdt, standing immediately behind the parties, never had a thought that there would be an assault on plaintiff, and he had followed the parties into the depot, and had far better opportunity for observation than the ticket agent, looking through the window.

The defendant would not be liable for a sudden attack by an intruder on a passenger if no warning was given and there were no circumstances which would put the ticket agent on guard to prevent it.

Without considering the many other errors set out, which might not occur in another trial, we have reached the conclusion that the giving of instruction No. 12 was prejudicially erroneous, and that the error was not cured by any other instruction.

REVERSED.